# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 77315-1-I |
| LESLIE MCCANN, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| JEFFREY MCCANN, | |
| Respondent. | FILED: March 4, 2019 |

APPELWICK, C.J. — Orr did not transfer her daughter to the child's father, McCann, for residential time as required under the parenting plan. On McCann's motion, the superior court found Orr in contempt. The court entered two subsequent orders holding Orr in contempt, and issued a writ of habeas corpus and a warrant in aid of the writ. Orr argues that she did not have the ability to comply with the parenting plan, that the contempt order should be vacated, and that the writ of habeas corpus and the warrant should be quashed. We affirm.

## FACTS

This is Leslie Orr's[1] second appeal in this case, which involves the dissolution of a marriage. See In re Marriage of McCann, 4 Wn. App. 2d 896, 898, 424 P.3d 234 (2018). The parties have one child together, V.M.

---

[1] Orr was previously known as Leslie McCann. The final dissolution decree changed her name to Leslie Orr.

Relevant to this appeal are some facts from our previous opinion:

The care of the parties' special needs child was the central issue in this dissolution proceeding. . . . The daughter has been diagnosed with high-functioning autism, separation anxiety, obsessive-compulsive disorder (OCD), and selective mutism. The parenting plan evaluation, authored by Clinical and Forensic Psychologist Dr. Gary Wieder, concluded that the daughter is "profoundly impaired and has lived a sheltered and unusual life." Dr. Wieder warned that "[w]ithout intensive specialized treatment for separation anxiety and OCD she will likely become a disabled adult." The daughter was completely estranged from her father for reasons that Dr. Wieder described as "completely irrational" and "a manifestation of [the daughter's] severe anxiety/OCD."

Id. at 898-99 (alterations in original).

Predating the parenting plan, Orr had a history of alienating V.M. from her father. The parenting plan evaluator wrote that V.M. "is now completely estranged from her father with whom she rejects contact of any kind . . . and all evidence supports the conclusion that no rational basis exists for this estrangement." The evaluator also wrote, "[T]he mother has largely controlled her daughter's treatment and academic development, has indulged the child's OCD rituals and her rejection of the father, and has managed these choices with little accountability to any other party, including the father."

The evaluator also found,

[I]n the face of unimpressive treatment results to date, the risk to this soon to be 12-year old child of remaining estranged from her father for no rational reason and of being unable to meaningfully separate from her mother in order to have a more normal childhood with the concomitant risk of becoming a disabled adult outweigh the risk of possible temporary detriment that could result from intensified treatment efforts.

2

The evaluation continued, "With regard to the child, evidence supports the conclusion that [the mother] has been a restrictive gatekeeper. To this author, this child's best interests are served to the extent that her father can be an active participant in her life and in major decision-making."

At the time of the dissolution trial in October 2016, McCann had not seen V.M. in about a year. On October 24, 2016, the trial court entered a parenting plan that had a three phase transition. V.M. was to live initially a majority of the time with Orr, and V.M.'s therapy provider and guardian ad litem (GAL) would determine when to increase her residential time with McCann. The plan also provided that, beginning April 21, 2017, the child would transition to living with McCann half of the time by alternating one week with the mother and the next week with the father. Additionally, the court granted McCann sole decision making authority for the child's education and medical care.

On July 14, 2017, the trial court entered an order finding Orr in contempt of court. It found that Orr did not follow the residential provisions of the parenting plan and withheld V.M. from McCann June 16-23, 2017, which was McCann's scheduled residential week under the plan. On July 31, 2017, the trial court entered a second contempt order. The written order memorialized the court's oral ruling on July 28, 2017. The court found,

> a. Orr has again failed or refused to obey the residential provisions of the October 2016 Parenting Plan (sub #232) even though obeying the Plan is yet within Orr's power to perform.

> b. In the alternative, the parties' child has resisted court-ordered residential time and Orr has either contributed to the child's attitude or failed to make reasonable efforts to require the child to

> comply with the Parenting Plan and court-ordered residential time. Not contributing to the child's attitude, and making reasonable efforts to require the child to comply with the Parenting Plan, are both yet within Orr's power to perform.

The court ordered V.M. to reside with the father from that day, July 28, to September 15, 2017.

Around 9:20 p.m. on July 28, 2017, V.M. went missing from her father's residence. Orr did not cooperate with McCann in attempting to find her. Later, Orr "had contact/communication" with V.M., but did not provide the court with information about that contact, as the court had ordered each parent to do. Because the child remained missing, "[t]he parenting plan giving residential time to McCann had not been implemented at the time of oral argument" in the last appeal, June 12, 2018. Id. at 899 n.2.

On August 7, 2017, McCann brought a motion for a writ of habeas corpus on behalf of V.M. The trial court granted the motion and ordered a writ of habeas corpus be issued, authorizing law enforcement to take custody of the child, along with a warrant authorizing police to take necessary action to enforce the writ. On September 21, 2017, the trial court entered a third contempt order against Orr. The court found that Orr remained in contempt for disobeying the parenting plan, and not remedying her actions as the court ordered her to do in its first two contempt orders. The court also found Orr in contempt for not providing information about V.M.'s whereabouts after she went missing from McCann's home.

4

Orr appeals the contempt order issued on July 28, 2017, the writ of habeas corpus, and the warrant in aid of the writ.[2] V.M. was still missing when the briefing in this appeal was filed.

## DISCUSSION

Orr makes three arguments. First, Orr argues that this court should vacate the trial court's order of contempt. Second, Orr argues that the writ of habeas corpus is improper. Third, Orr asserts that the warrant in aid of the writ of habeas corpus is illegal.

### I.   Order of Contempt

Orr argues first that this court should vacate the order of contempt. Orr asserts that the trial court erred in finding that she had the ability to comply with the parenting plan. And, she argues that this case is distinguishable from In re Marriage of Rideout, 150 Wn.2d 337, 77 P.3d 1174 (2003).

This court reviews a trial court's decision on contempt for an abuse of discretion. In re Marriage of Davisson, 131 Wn. App. 220, 224, 126 P.3d 76 (2006). On appeal, it is the trial court's written order that is the subject of review; its oral ruling may be considered if consistent with the written order, including the court's findings of fact. See Diversified Wood Recycling, Inc. v. Johnson, 161 Wn. App.

---

[2] In her notice of appeal, Orr also listed the order compelling deposition, the order adopting the guardian ad litem's July 2017 recommendations, the order shortening times for respondent's motion, and the order for change of judge. A commissioner of this court determined that only the July 31 second order of contempt and the August 7 writ of habeas corpus (and related orders) are appealable.

859, 880, 251 P.3d 293 (2011). The trial court's findings in support of an order of contempt are reviewed for substantial evidence. Rideout, 150 Wn.2d at 352.

Parents are deemed to have the ability to comply with orders establishing residential provisions. Id. at 352-53. The burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance. Id. "An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan, or to hinder the performance by the other parent of duties provided in the parenting plan, shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court." RCW 26.09.160(1). "If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court." RCW 26.09.160(2)(b).

In Rideout, a father initiated a contempt proceeding against his former wife, alleging that she demonstrated a pattern of interference with the residential time with their children to which he was entitled under the parenting plan. 150 Wn.2d at 340. The trial court commissioner "held that [the mother] was responsible for making reasonable efforts to ensure [the child's] compliance with the residential time order." Id. at 347. The commissioner reasoned that "'[a] child of twelve or thirteen is not of a sufficient age and maturity that she can be given decision-making authority over whether visitation occurs.'" Id. (alteration in original). The trial court found the mother in contempt, and this court affirmed. Id. at 348.

6

Our Supreme Court stated that, "[a]lthough [the child] may not have wanted to visit her father on July 27, 2000, and on other occasions, [the mother] made no attempt to overcome the child's intransigence or to deliver her to [the father]'s house on July 27, 2000, as she was ordered to do." Id. at 355. The court continued,

> Although [the mother] portrayed herself as a powerless bystander without the ability to require [the child] to visit her father in accordance with the parenting plan and orders of the court . . . by doing so she sidestepped her responsibilities as a parent. There are no doubt numerous instances where a child may not want to visit with his or her parent in accordance with a parenting plan or pursuant to a specific order of the court. Whether they like it or not, parents, like [the mother], have an obligation to attempt to overcome the child's resistance to the residential time in order to ensure that a child's residential time with the other parent takes place.

Id. at 356. The court affirmed the contempt order, holding,

> [W]here a child resists court-ordered residential time and where the evidence establishes that a parent either contributes to the child's attitude or fails to make reasonable efforts to require the child to comply with the parenting plan . . . such parent may be deemed to have acted in "bad faith" for purposes of RCW 26.09.160(1).

Id. at 356-57.

Orr argues that this case differs from Rideout because she "has repeatedly tried to get [V.M.] to leave her house when it was time for visitation, but [V.M.] would not leave." Orr claims that she "did indeed want [V.M.] to spend the time with her father and was frustrated by [V.M.]'s refusal to comply." She also asserts that this case is distinguishable because, unlike the neurotypical child in Rideout, V.M. has "mental health issues" that make transitions more difficult and stressful.

7

Orr cites to her declaration in response to the motion for contempt. In her declaration, Orr stated, "I am extremely concerned for [V.M.]'s mental health. She is being pushed to the breaking point emotionally by the stress of the attempted exchanges in addition to the extreme changes in her life." Orr told the trial court that there were "complicating factors" in this case, including "[V.M.]'s disability and Jeff's abuse (of me and of [V.M.])." She continued, "Of course, [V.M.] is a pre-adolescent, but in spite of her strong-willed nature, she has always behaved; been respectful of others; and compliant with rules." Orr also wrote,

> Despite the above, I am doing my best to comply with the court's orders. [V.M.] has lost a number of privileges as a result of the financial impact her refusal to cooperate with visitation has had. . . . I do not believe that it is reasonable to take away therapeutic interventions (socialization, horseback riding, computer games) as a punishment and I will not physically discipline my 12-year-old daughter.

In contrast to Orr's representation, the GAL noted in her status report on December 27, 2016 that V.M. and McCann's visits over the Christmas holiday had gone well. The GAL wrote, "Both parents described these as going very well for [V.M.]. . . . The father also reports that [V.M.] has been texting him non-stop since their first meeting and sharing pictures and videos." According to McCann,

> Since the Parenting Plan was entered, [V.M.] has regularly been alone with me without fear. There have been some tough transitions, but as the week with me goes on, especially if [V.M.] made it to school on the exchange Friday, things go much better. Over the past few months I've tried to transition [V.M.] into full-time school (as recommended by the school) and help her get accustomed to the demands of completing and turning in homework, and have also tried to get updated autism assessments and deal with other health care issues (such as vaccinations), all without support from [Orr], and in many cases with [Orr]'s open opposition and obstruction. I'm put in

the position of being the only parent who tries to do what's in [V.M.]'s best interest.

In the first contempt order on July 14, the trial court found,

[Orr] has the present ability to require the minor child, age 12, to transfer into McCann's care or into the care of a professional supervisor who can deliver the child to McCann. By her actions, Orr has demonstrated that she is not willing to follow all of the parenting plan.

The court also found,

Orr has "poisoned" the child against—i.e., urged the child to resist—McCann's attempts to have the child assessed for potential autism diagnoses/treatments.

Orr's opinion that the child is disabled has made it difficult for the child's primary medical doctor to treat the child effectively and is harmful to the doctor's therapeutic relationship with the child.

In the second contempt order, the trial court again found that Orr failed or refused to obey the parenting plan. In the alternative, the court found that the child had resisted the residential time and that "Orr has either contributed to the child's attitude or failed to make reasonable efforts to require the child to comply." Further, this is not just a case in which a child is recalcitrant, because Orr has also not cooperated in locating V.M. after she went missing from McCann's home. As in Rideout, the trial court was unpersuaded by Orr's argument that she attempted to comply with the parenting plan. 150 Wn.2d at 353.

Under Rideout, "a parent should not be punished for the actions of a truly recalcitrant child." Id. at 356. But, "punishment is appropriate when the parent is the source of the child's attitude or fails to overcome the child's recalcitrance when, considering the child's age and maturity, it is within that parent's power to do so." Id. Orr had a history predating the parenting plan of alienating V.M. from her father.

Orr had been very controlling of education and health care for V.M. The trial court had also determined that it was in the best interest of the child for McCann to have sole decision-making power over V.M.'s education and medical care.

Orr did not meet her burden of establishing by a preponderance of the evidence that she lacked the ability to comply with the parenting plan. The trial court did not abuse its discretion in entering the contempt order against Orr.[3]

## II. Writ of Habeas Corpus

Orr argues second that the writ of habeas corpus is improper and must be quashed. She argues that, because the court does not state on the record that either parent is restraining the child, habeas corpus is not the proper remedy.

The statute authorizes a court to grant a writ of habeas corpus "in favor of parents, guardians, limited guardians where appropriate, spouses or domestic partners, and next of kin, and to enforce the rights, and for the protection of [children]." RCW 7.36.020.

Relying on In re Habeas Corpus by Schreifels, 47 Wn.2d 409, 287 P.2d 1001 (1955), Orr asserts that "the very nature of a writ requires that there be: (1) restraint, (2) that is illegal, (3) by an individual." In Schreifels, the court stated, "The office of the writ is not to recover their possession, but to free them from illegal restraints upon their liberty. The detention of a child of tender years from one entitled to [her] custody is an illegal restraint within the law." Id. at 414. Schreifels, which examines a writ of habeas corpus proceeding in connection with the

---

[3] McCann argues that Orr's appeal of the second contempt order is moot, because she does not appeal the third contempt order. We decline the invitation to find the appeal moot, and we affirm the second order.

"custody of children," does not hold that a writ of habeas corpus is proper only where the court makes a finding of who is restraining the child. See id. at 414, 417.

Orr also cites a Georgia case, in which the court states that a habeas corpus proceeding should be against the person who has physical custody of the child. Gibson v. Wood, 209 Ga. 535, 535, 74 S.E.2d 456 (1953). But, we are not bound to follow the interpretations of another state's court. See In re Det. of Petersen, 138 Wn.2d 70, 80-81, 980 P.2d 1204, (1999) ("In the absence of any constitutional issues, the Washington Supreme Court is the final arbiter of the meaning of Washington statutory law.").

And, Orr cites In re Writ of Habeas Corpus of Nahl, 49 Wn.2d 318, 301 P.2d 161 (1956). The Nahl court states, "It appears to be a rule of general application that the person who has custody of a prisoner, and who is exercising actual restraint of his person, and who has the power to produce him physically, is the one to whom the writ of habeas corpus should be directed." Id. at 321-22 (emphasis omitted). Nahl is inapposite, because that case concerned whether a criminal defendant, diagnosed with a mental illness and held at a hospital, could petition for a writ of habeas corpus. Id. at 319-20.

Here, the writ directed the King County Sheriff and every peace officer of Washington, "You are commanded to secure custody of the body of [V.M.], wherever the child may be detained." It also stated, "You are further ordered to break and enter any outer or inner door or other opening of any building, vehicle,

11

or other enclosure as necessary to secure the body of said child and bring the child before the court."

The relevant statute controls the contents of a petition for a writ, and authorizes the court to grant the writ. RCW 7.36.030; RCW 7.36.040. It also requires that a writ "be directed to the officer or party having the person under restraint." RCW 7.36.050.

The writ of habeas corpus here directs law enforcement to find and take custody of V.M. It is not against Orr. McCann was the person to whom the court ordered V.M. should have residential time with, under the most recent contempt order at the time. The parenting plan and additional orders of the court describe where the child is legally to be. If the child is elsewhere, without the permission of the parent with whom she is scheduled to reside, she is not legally in physical custody of another person, whether it is the other parent or a third party. The purpose of the writ of habeas corpus is to locate V.M. so that she can be restored to McCann.

Orr does not cite to any authority for the proposition that a child, whose whereabouts are unknown, cannot be the subject of a writ of habeas corpus in which the court directs officers to locate her.

The writ of habeas corpus was properly issued.

III.     Warrant in Aid of the Writ of Habeas Corpus

Orr argues next that the warrant in aid of the writ is "based upon a falsehood—the illegal restraint of a child," and that it lacks the constitutional requirement of particularity.

The same chapter authorizing the court to enter a writ of habeas corpus also grants the court power to issue a warrant in aid of the writ:

Whenever it shall appear by affidavit that any one is illegally held in custody or restraint . . . such court or judge may cause a warrant to be issued reciting the facts, and directed to the sheriff or any constable of the county, commanding him or her to take the person thus held in custody or restraint.

RCW 7.36.190.

The trial court issued a warrant authorizing officers to enter "any residence, building, structure, or vehicle in which you have reason to believe the child, [V.M.], is located or where information pertaining to the location of the child(ren) may be found, i.e., the residence of Leslie Orr." (Boldface omitted.)

Orr argues that the warrant "is completely devoid of the constitutional requirement of particularity." Conversely, Orr argues that the "inclusion of the mother's address on the warrant is completely contrary to the [c]ourt's finding at the hearing."

The warrant is as particular as the facts surrounding V.M.'s disappearance. See State v. Scherf, ___ Wn.2d ___, 429 P.3d 776, 787 (2018) ("A description is valid if it is as specific as the circumstances and the nature of the activity, or crime, under investigation permits."). The warrant permits law enforcement to enter premises only when they have reason to believe the child is within; in other words, the usual prerequisites apply. Likewise, officers may detain Orr only if she impedes their efforts to recover the child. The warrant is not unconstitutionally vague, or contrary to the court's findings.

IV.   Attorney Fees

Both parties ask this court to award attorney fees.

Orr requests attorney fees and costs under RCW 26.09.140 and RAP 14.2. As Orr is not the prevailing party on appeal, her request for fees and costs is denied.

McCann requests attorney fees and costs under RAP 18.9. Under the rule, the appellate court may order a party to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply. RAP 18.9(a). And, RCW 26.09.160(1) provides,

> An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan, . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

Further, RCW 26.09.160(2)(b)(ii) provides,

> (b) If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
>
> . . . .
>
> (ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child.

Orr acted in bad faith in not complying with the court order establishing residential provisions for V.M. And, McCann has been harmed by her failure to comply with the trial court's orders. She must, therefore, pay McCann's attorney

fees and costs for his appeal to this court, in accordance with RAP 18.9(a), RCW 26.09.160(1), (2)(b)(ii).

We affirm.

_Appelwick, CJ_

WE CONCUR: