[No. 47294-7.   En Banc.   July 2, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED WILLIAM LaCAZE, *Appellant*.

*Fred W. LaCaze,* pro se, *Michael E. Gillespie,* and *John Bridges,* for appellant.

*Douglas S. Boole, Prosecuting Attorney,* and *Thomas Benner, Deputy,* for respondent.

Dimmick, J.—This case presents the question of whether a parent may be found guilty of second degree kidnapping of his own children when no evidence is introduced showing that his parental rights have been limited by court order or decision. We hold he may not be properly convicted of kidnapping and thereby reverse the trial court.

The facts are not in dispute. Defendant was on an extended furlough from the Washington State Penitentiary at Walla Walla, beginning November 6, 1978. The furlough was limited, and did not include authority to travel to the Omak, Okanogan County, home of his four children, ages 16, 11, 8 and 6. On the evening of November 14, at 11:30 p.m., defendant went to the children's home while their mother was at work. He showed them a document purported to be from the Board of Prison Terms and Paroles granting defendant parole and permission to take custody of the children for 2 weeks. He convinced the children that it was proper for them to go with him to California and to see Disneyland. The family traveled through Washington,

Oregon and into California where the defendant allegedly engaged in an incestuous relationship with his eldest daughter. On his subsequent arrest and return to Okanogan County, defendant was charged with one count of kidnapping in the first degree "with intent to facilitate the commission of the felony of incest" with the eldest child, and three counts of kidnapping in the second degree for taking the three youngest children.

At trial, defendant moved for a directed verdict on the ground that he could not be found to have "abducted" the children, a material element of the crime of kidnapping because the State failed to introduce any evidence indicating that defendant was without legal authority to have custody of his children. This motion was denied, as was a subsequent motion for arrest of judgment. The jury returned a verdict of not guilty as to kidnapping in the first degree. The defendant was found guilty of three counts of kidnapping in the second degree of the younger children.

I

Kidnapping in the second degree is defined in RCW 9A.40.030 and reads as follows:

(1) A person is guilty of kidnaping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnaping in the first degree.

RCW 9A.40.010(2) defines abduction as the act of "restrain[ing] a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force". "Restraint" is a crucial element of abduction and is defined in RCW 9A.40-.010(1):

(1) *"Restrain" means to restrict a person's movements without consent and without legal authority* in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution hav-

ing lawful control or custody of him has not acquiesced. (Italics ours.)

A parent's right to custody of his or her children is fundamental. *See In re Myricks,* 85 Wn.2d 252, 253–54, 533 P.2d 841 (1975); *Schreifels v. Schreifels,* 47 Wn.2d 409, 414, 287 P.2d 1001 (1955); *In re Neff,* 20 Wash. 652, 56 P. 383 (1899). Our legislature has decreed that each parent has an equal right to have custody of the children in the absence of misconduct. RCW 26.16.125. *See also In re Hudson,* 13 Wn.2d 673, 693, 126 P.2d 765 (1942). Thus, in the absence of a court order, both share the right to custody even if the parents are living apart. *See Schreifels,* at 414. Although these pronouncements have arisen in the context of custody proceedings, they are equally applicable to the instant case. It appears, then, that a parent, such as defendant, is presumed to have the right to custody of the children.

In this case, there is nothing in the report of proceedings from the trial even intimating that defendant did not have the right to have legal custody of the children. The State introduced no evidence that the mother had sole legal custody of the children or even that defendant and the mother of the children were divorced. Thus, there was nothing on which the jury could base its conclusion that defendant restrained the children "*without consent and without legal authority*". (Italics ours.) RCW 9A.40.010(1).

The State counters by claiming that the jury could conclude that defendant was without legal authority to take the children because of his status as an inmate of the state penitentiary and because of his status as an escapee stemming from the violations of his conditions of furlough. The State's argument is unfounded. Imprisonment (nor escape from imprisonment) does not in and of itself automatically deprive the prisoner of his or her legal right to custody. *In re Sego,* 82 Wn.2d 736, 740, 513 P.2d 831 (1973). *See also In re Staat,* 287 Minn. 501, 178 N.W.2d 709 (1970). A court may, of course, order permanent child deprivation based on the parent's criminal misconduct. But it is the order of the

court, and not the mere fact of imprisonment, which in fact deprives the parent of the right to custody.

Therefore, under the circumstances of this case, since the State failed to meet its burden of proof, the trial court erred in submitting the case to the jury. *See In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

We hereby reverse the trial court.

ROSELLINI, UTTER, HICKS, WILLIAMS, and DORE, JJ., concur.

BRACHTENBACH, C.J. (dissenting)—I concur with the dissent of Justice Dolliver, but on a somewhat different analysis.

The issue is not as stated by the majority. This case does not involve an ordinary physical custody dispute between competing parents and the right of one legally unfettered parent to assume custody of his or her children.

Rather, broadly stated, the issue is whether the defendant took his children "without legal authority." If he did, his conviction must be upheld.

More narrowly and accurately, the sole issue is: Does a father who is a prison inmate but on furlough have legal authority to take his children from their mother's home under the following factual circumstances:

A. He is a convicted felon serving time in the penitentiary;

B. His furlough restricts his physical presence to a town approximately 150 miles from the location of his children;

C. He is prohibited from driving an automobile, which he does to take custody of his children;

D. Without permission, he enters the home where the children reside with their mother after ascertaining that their mother is not home;

E. He exhibits a forged document purporting to grant him parole from the Board of Prison Terms and Paroles and purportedly granting him specific permission to have

his children live with him from November 8, 1978, to January 3, 1979, "and again on June 4th to August 15th, 1979 as per [his wife's] request and the order of the court" and further purportedly granting him the privilege to travel outside the state as he saw fit;

F. The oldest child believed he would force them to accompany him in any event.

As noted, our task is to determine whether defendant, *under the above circumstances,* acted without legal authority. The legislature did not define the term "without legal authority." Therefore it is our duty to determine legislative intent, *i.e.,* did the legislature intend that a defendant so situated did have legal authority to take his children?

In addition to our own rules of statutory construction, we have a mandate, ignored by the majority, of the principles of construction in aid of the declared general purposes of the Washington Criminal Code. Relevant are these purposes: (1) to forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests and (2) to construe the provisions of the code according to the fair import of their terms, but when the language is susceptible of differing constructions to interpret them to further the general purpose stated above. RCW 9A.04-.020(1)(a) and (2).

Our rules of construction include the principle that statutes should not be construed to reach absurd results. *Blondheim v. State,* 84 Wn.2d 874, 879, 529 P.2d 1096 (1975).

What then was the legislative intent in attaching a criminal penalty to action taken without legal authority? In other words, what is the meaning of legal authority? We look to the ordinary meaning of the words. *State v. Missmer,* 72 Wn.2d 1022, 1026, 435 P.2d 638 (1967).

The appropriate dictionary definition is: "4: conforming to or permitted by law . . . conforming to the procedures and methods prescribed by law . . ." *Webster's Third New International Dictionary* 1290 (1976).

The law definition of "legal" is comparable to its ordinary dictionary meaning. "1. Conforming to the law; according to law; required or permitted by law; not forbidden or discountenanced by law . . ." (Citations omitted.) Black's Law Dictionary 1038 (4th ed. 1968). *Accord, Freeman v. Fowler Packing Co.,* 135 Kan. 378, 380, 11 P.2d 276 (1932).

The only case located dealing specifically with the words "legal authority" within a kidnapping statute is *State v. Epps,* 36 Ore. App. 519, 522, 585 P.2d 425, 427 (1978) where the court stated: "Obviously, with 'legal authority' means authorized by law."

Was the defendant then conforming to the law, were his actions permitted by law, were they not forbidden by the law?

The defendant was not only acting without legal authority, he was in violation of the law specifically and forbidden to even be where he was when taking his children. RCW 72.66.026(1).

The legal restrictions upon defendant's rights are obvious. Even though on furlough he was in legal custody of the State as an incarcerated felon. "[T]he grant of a furlough is not intended to constitute a release from the custody of the Department, but merely extends the limits of custody according to its terms, be that custody characterized as actual or constructive." *Smith v. State,* 361 A.2d 237, 238 (Del. 1976).

Even though on furlough, defendant was considered to be confined in a detention facility, at least for certain purposes. RCW 9A.76.010(2)(e).

The defendant's acts do not gain legal authorization from the fact that if he were not a prison inmate he might have had the right to child custody. While in prison he had no such immediate right. Losing certain rights is a necessary incident of prison confinement. *Pell v. Procunier,* 417 U.S. 817, 822, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974). Separation from one's family is a necessary deprivation which is constitutionally tolerated. *Oxendine v. Williams,* 509 F.2d 1405

(4th Cir. 1975); *McCray v. Sullivan,* 509 F.2d 1332 (5th Cir.), *cert. denied,* 423 U.S. 859, 46 L. Ed. 2d 86, 96 S. Ct. 114 (1975).

As noted by Justice Dolliver, the majority states some principles of law about custody which are accurate but totally irrelevant. This is not a custody issue between parents and it is not a question of permanent deprivation of parental rights. Rather it involves a very narrow question whether an incarcerated prisoner has legal authority to assume secret and fraudulent total physical custody of his children in violation of the terms of his furlough and therefore in violation of the law.

I suggest that the foregoing analysis heeds the legislative mandate and does construe the applicable statute according to the fair import of its terms. Further, it carries out the purposes of forbidding and preventing conduct that inflicts or threatens substantial harm to individual or public interests.

Even apart from the legislative mandate, we should heed the wisdom that:

> Even the rule that penal statutes are to be strictly construed does not permit a court to ignore the legislative intent, nor does it require the rejection of that sense of the words used which best harmonizes with the design of the statute or the end in view.

*State v. Prevo,* 44 Hawaii 665, 669, 361 P.2d 1044 (1961).

The defendant's conviction should be affirmed.

STAFFORD, J., concurs with BRACHTENBACH, C.J.

DOLLIVER J. (dissenting)—Defendant Fred LaCaze was confined to the Washington State Penitentiary at Walla Walla. In November of 1978, he was given a furlough from the penitentiary with certain conditions attached. Among these conditions was: no authorization to leave the county of furlough without permission. RCW 72.66.026. (Okanogan County was not the county of furlough and defendant had not received permission to go there.) Defendant was to

report to the authorities in Spokane on November 15, 1978. By that time he was well away on the excursion described in the majority opinion. A willful failure to return from a furlough at the time specified in the parole order constitutes an escape from confinement which is in violation of criminal law. *See* RCW 72.66.060.

The majority confuses "legal authority", the requirement of the criminal law in RCW 9A.40.010(1), with "legal custody", a concept contained in domestic relations law. *See* RCW 26.09.180–.280. While the record does show that defendant had taken the children without the consent of their mother, the court has nothing before it whatever on the rights of custody, if any, defendant may have had to his children. Regardless of what "legal custody" defendant may have had over the children, it can hardly be asserted that he had "legal authority" to engage in the action which resulted in his conviction of three counts on second degree kidnapping.

The majority cites *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973), for the proposition that neither imprisonment nor criminal conduct (*e.g.,* escape) will per se mean loss of child custody. While accurate, it is irrelevant. That is not the issue in this case.

Although the defendant called no witnesses, it appears his theory of the case was that his sole interest in taking the children was to assume custody. His theory that he had "legal custody" of the children and was simply asserting that custody was not accepted by the jury. Apparently the jury felt the real intention of defendant was to engage in an incestuous romp through Washington, Oregon and California with the older sister of the three younger children. There is ample evidence in the record from which the jury could be persuaded of that fact beyond a reasonable doubt.

The heart of the matter is whether, given defendant's status and the restrictions placed upon him as a prisoner, he had the "legal authority" to take the children, regardless of what his intent may have been. The restriction of prisoners and the limitation of their rights and privileges does

not violate the constitution. *See Bell v. Wolfish,* 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977).

A prisoner generally retains all the rights of an ordinary citizen except those expressly or by necessary implication taken from him by law.

*Hystad v. Rhay,* 12 Wn. App. 872, 878 n.12, 533 P.2d 409 (1975).

It seems to me that since defendant's right and legal authority to go to Okanogan County or to leave the state was expressly taken from him, by necessary implication he also lost his legal authority to take his children. Even arguing, as defendant does, that he simply intended to assert his "right of custody", the fact is the jury refused to believe him. Beyond that, even if he may have had a right to "legal custody", he had no legal authority to assert that right as a violator of his furlough nor any legal authority to take his children.

The trial court should be affirmed. I dissent.