# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 70066-9-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PAUL ROBERT CULVER, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 16, 2014 |

2014 JUN 16 AM 9:39

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

DWYER, J. — Paul Culver was caught attempting to steal an air compressor from a former naval barracks (Building 9) at Seattle's Magnuson Park. Several men who worked at Building 9 confronted Culver and the police were called. A search of Culver's truck, which was parked nearby, revealed materials that had been removed from Building 9. Thereafter, Culver was charged with and convicted of the crime of burglary in the second degree. On appeal, he challenges the sufficiency of the evidence to support his conviction. Concluding that sufficient evidence was presented, we affirm.

I

Magnuson Park was a United States Naval Base before it was purchased by the University of Washington and converted to a public park. Some of the naval buildings remain on the property, including a former barracks referred to colloquially as "Building 9." During September 2011, Building 9 was undergoing

asbestos remediation and was not open to the public. The doors to the building were chained shut, loose doors and broken windows were boarded up, and signs were posted in numerous windows indicating that the building should not be entered. The University of Washington and its contractors took these precautions, in part, to protect Building 9 from burglars and metal thieves.

On September 13, 2011, just after 8:00 a.m., Jose Gonzalez arrived for work at Building 9. Gonzalez was employed as a custodian and was tasked, in part, with providing maintenance and security for Building 9. When he arrived, Gonzalez noticed an unidentified man tearing metal piping from the exterior of the building. He also noticed the defendant, Paul Culver, who was sitting down next to the building, and looked "like he was taking a break or something." Gonzalez confronted the man who was tearing metal piping from the exterior of the building and told him to stop and to leave. The man then started to walk away and eventually got into a black pickup truck. Gonzalez then drove around the building, during which time he called and notified others of what he had seen. After circling the building, he again saw the man in the truck and again confronted him. Gonzalez noticed "a lot of stuff" in the back of the truck and accused the man of stealing materials from the building, adding that he was going to call the police. Gonzalez also blocked the truck with his own vehicle. In response, the man abandoned the truck and fled on foot. The man was never found.

Shortly thereafter, some of the asbestos remediation workers, including Josh Jennings, exited Building 9 and contacted Gonzalez. As the men

conversed, looked in the truck, and waited for the police to arrive, they noticed Culver get up and start walking toward the building. Gonzalez and Jennings followed Culver and found him inside a fenced enclosure that formed part of Building 9.

The fenced enclosure housed industrial-sized air compressors. Two of the four sides of the enclosure were formed by the walls of Building 9, with the other two sides being formed by a chain-link fence approximately 4 feet in height. The enclosure was approximately 6 to 8 feet deep and 20 to 30 feet wide. Normally, there were three large air compressors, which were attached to the exterior of Building 9, mounted within the enclosure.

Gonzalez and Jennings found Culver lying on the ground inside the enclosed area behind one of the air compressors. Culver had with him a large bag of tools and was holding an electric "sawzall," which he was using to cut through the bolts that attached the air compressor to the building. When Culver saw Jennings and Gonzalez approach, he stopped cutting and scooted his body closer to the air compressor. Gonzalez noticed that one of the three air compressors normally contained in the enclosure had been removed and was missing.

Jennings asked Culver what he was doing, to which Culver replied "cutting stuff out." When Jennings asked why, Culver "didn't really have a reason." Jennings then "asked him what made him think that he could just cut the compressors out." Culver "didn't really have an answer for that." Jennings then told Culver that the police were on the way. Culver gathered up his tools and

appeared to be texting on his phone. Before the police arrived, Gonzalez heard Culver admit that the black pickup truck parked at the end of the building belonged to him. When the police arrived, they arrested Culver for burglary.

After Culver's arrest, Gonzalez, Jennings, and other contractors examined the items in Culver's truck. They recognized the plastic sheeting and telecommunications cable in the bed of the truck as having come from inside Building 9. Gonzalez also recognized the air compressor in the bed of the truck as the one missing from the fenced enclosure in which Culver was found.

Culver was charged by information with burglary in the second degree. After a jury trial, Culver was found guilty as charged. He was sentenced to 51 months in prison.

Culver appeals.

II

Culver contends that insufficient evidence was presented to support his conviction of burglary in the second degree. This is so, he avers, because the State (1) did not prove that he unlawfully entered a building, and (2) did not prove that he intended to commit a crime against a person or property in a building. We disagree.

When reviewing a sufficiency of the evidence challenge, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,

61 L. Ed. 2d 560 (1979)). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Salinas, 119 Wn.2d at 201. "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

"A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). So long as a person enters or remains unlawfully in a building, intent to commit a crime therein may usually be inferred.

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040. A building, "in addition to its ordinary meaning, includes any . . . fenced area." RCW 9A.04.110(5).

Although Culver avers that the evidence did not establish that he unlawfully entered a building, he neglects to acknowledge testimony from multiple witnesses who testified that they saw him inside a fenced area. Indeed, both Gonzalez and Jennings described seeing Culver inside a fenced area,

attempting to remove an air compressor. When asked why he was inside the fenced area attempting to remove the air compressor, Culver offered no justification for his presence or for his actions. Moreover, circumstantial evidence was presented to the jury tending to prove that Culver entered Building 9 itself, including materials from Building 9 that were discovered in the back of Culver's pickup truck. The eyewitness testimony and circumstantial evidence in the record demonstrate that the State presented sufficient evidence that Culver entered or unlawfully remained within a building.

Given that Culver entered or unlawfully remained within a building, it would have been permissible for the finder of fact to infer that Culver acted with intent to commit a crime against property therein. RCW 9A.52.040. However, the finder of fact did not need to infer criminal intent, as the record was replete with direct evidence of Culver's criminal intent. Culver was witnessed attempting to cut an air compressor from its base. When he realized he had been seen, he stopped cutting and moved his body closer to the air compressor, presumably trying to hide himself. When asked what he was doing, Culver was unable to justify why he was attempting to remove the air compressor or what authority he had to do so. Furthermore, an identical air compressor, which had already been cut from its base, was found in Culver's truck, along with other items from Building 9. This evidence was sufficient to establish Culver's criminal intent.

While Culver's arguments on appeal do not explicitly invite us to weigh the evidence, we would need to do so were we to overturn his conviction. We do not weigh the evidence when reviewing a challenge to the sufficiency of the

evidence. Accordingly, we hold that sufficient evidence was presented to establish that Culver committed the crime of burglary in the second degree.

Affirmed.

We concur: