IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31802-8-III |
| Respondent, | ) | |
| | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JON JASON KING, | ) | |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Jon Jason King appeals his three convictions for residential burglary. Two counts include aggravating factors. Mr. King contends insufficient evidence supports his convictions because he was too incapacitated by intoxication to formulate the necessary intent. In his statement of additional grounds for review (SAG), Mr. King expresses concerns about violations to his right to a fair and impartial jury and due process; he also contends the trial court erred in giving the reasonable doubt pattern jury instruction and in imposing legal financial obligations (LFOs) without first determining his ability to pay. We disagree with Mr. King's main contention and his first three SAG contentions and affirm. We remand because the State concedes the trial court failed to enter written findings of fact and conclusions of law supporting his exceptional sentence. On remand, Mr. King can raise his objections to the imposition of discretionary LFOs.

FACTS

On the evening of March 27, 2013, a number of condominiums located on the Meadow Springs Golf Course in Richland, Washington were burglarized. Samantha Norris was home alone when she heard footsteps coming down the hallway toward her room. Ms. Norris asked who was there but got no response; the footsteps kept coming. As her bedroom door opened, she yelled and saw a man run away from the room. Ms. Norris left the residence and called the police. Ms. Norris and her roommate, who had returned while the police cleared the residence, determined a pack of the roommate's Camel menthol cigarettes were missing. The police noted the slider door, which faced the golf course, was open.

Similarly, Jean Smith was home alone, reading in her bed on the second floor of her residence, when she heard rattling noises. However, she was not alarmed as she assumed it was leaves on her skylight. A short time later, an officer arrived at the residence and told her to go outside. While she waited outside, Ms. Smith's husband came home. The Smiths determined the man stole the following items: (1) five $20 bills from Ms. Smith's purse in the kitchen; (2) some medication from the kitchen; (3) collectible coins, a silver dollar, a watch box, and a notepad from the spare bedroom upstairs; and (4) a bottle of whiskey.

It was Ms. Smith's neighbors, Ruth LaBouy and Gary Faust, who called the police. Ms. LaBouy noticed a man with a backpack. Mr. Faust went outside and watched the man stand near the sliding door on Ms. Smith's deck. Mr. Faust asked the

man what he was doing, and the man mumbled a word that sounded like "Jerry."
Report of Proceedings (RP) (June 3, 2013) at 254. Mr. Faust told the man no one by
that name lived there and he should leave, which the man apparently did. A few
minutes later, while checking to make sure the man was gone, Mr. Faust saw a
flashlight beam shining first in Ms. Smith's kitchen then in the living room. He called the
police.

Corporal Hyram Stohel and Officer Jason Crouch responded to the Smiths'
residence. Both officers observed a flashlight in the upstairs window. A short while
later, a man, later identified as Mr. King, walked out the Smiths' front door carrying
numerous items in his gloved hands, including a large bottle of alcohol, some coins, and
cases. The officers ordered Mr. King to show his hands. Mr. King instead turned back
toward the Smiths' residence and unzipped his coat, which caused several items to fall
out, including a notepad, coins, and cigarettes; Corporal Stohel perceived this as an
obvious attempt to get rid of the stolen items.

Officer Jory Parish approached Mr. King and arrested him. Mr. King kept asking
why he had been arrested. When told it was for burglary, Mr. King said, "This is my
friend's house. I have permission to be here." RP (June 3, 2013) at 191. Officer Parish
searched a noncompliant Mr. King and partly found pill bottles belonging to a Ronald
Riley and Ms. Smith and five $20 bills. Officer Parish then had difficulty getting Mr. King
to sit in the back of the patrol car. Once Mr. King was finally sitting in the car, Corporal
Stohel told him another search needed to be done. Mr. King said he would comply with

3

officers' commands as the car was too hot. After completing the second search, Officer Parish had to use knee strikes to get Mr. King back into the patrol car. Once inside the car, Mr. King kept sticking his leg out of the car to prevent Officer Parish from shutting the door. After Mr. King complained of leg pain, he was transported to an area hospital before being medically cleared to be booked into jail.

During his contact with Mr. King, Officer Parish observed Mr. King was obviously intoxicated as he could smell alcohol on his breath and Mr. King exhibited slurred, slow speech and had balance issues when walking. Officer Crouch similarly noted Mr. King was intoxicated but not grossly intoxicated. He observed nothing in his interactions with Mr. King that demonstrated Mr. King was unaware of where he was or what was happening. Corporal Stohel testified Mr. King had no issues with communication, could move freely on his own, had quick reflexes, and nothing about Mr. King's demeanor showed he did not understand what was happening.

While the officers were dealing with Mr. King, other officers found two backpacks around the Smiths' residence. One of the backpacks contained hospital identification badges and medication belonging to Mr. Riley, who lived on the golf course but was out of town on that evening. Police determined the entry point into Mr. Riley's residence was the sliding door facing the golf course.

Mr. King was charged with three counts of residential burglary, two of which alleged the victim-inside-the-dwelling aggravating circumstance. The State alleged the multiple current offenses aggravating circumstance. The court gave the jury a voluntary

4

intoxication instruction.[1] The jury returned guilty verdicts on all three counts and found

the aggravating circumstances as alleged in two of the counts. The sentencing court

imposed a 108-month exceptional sentence and provided its reasons for doing so in an

oral ruling. Mr. King appealed.

## ANALYSIS

The issue is whether sufficient evidence exists to establish the intent element of

residential burglary. Mr. King contends he was too incapacitated to form the necessary

intent.

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d

216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443

U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency

challenge "admits the truth of the State's evidence and all inferences that reasonably

can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

We defer to the jury's assessment of conflicting testimony, witness credibility, and

evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989). To

establish residential burglary, the State must show (1) evidence of an unauthorized

---

[1] Jury Instruction 15 read: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with intent or knowledge." Clerk's Papers at 175.

entry into a dwelling and (2) intent to commit a crime within that dwelling. *State v. Grimes*, 92 Wn. App. 973, 977-78, 966 P.2d 394 (1998) (citing RCW 9A.52.025(1)).

While voluntary intoxication is not a defense to a crime, it "may bear upon whether the defendant acted with the requisite mental state." *State v. Fuller*, 42 Wn. App. 53, 55, 708 P.2d 413 (1985). It is not the fact of intoxication which is relevant; rather, it is the degree of intoxication and the effect it had on the defendant's ability to formulate the requisite intent. RCW 9A.16.090; *State v. Coates*, 107 Wn.2d 882, 891, 735 P.2d 64 (1987). A voluntary intoxication instruction allows the jury to consider evidence of intoxication when deciding whether the State proved the defendant acted with the crime's requisite intent. *State v. Webb*, 162 Wn. App. 195, 208, 252 P.3d 424 (2011).

Here, the evidence is sufficient to show Mr. King's ability to form the necessary criminal intent. All of the residences burglarized were the same type—condominiums with sliding doors that faced the golf course—and Mr. King came prepared with gloves and a flashlight for at least one of the burglaries. Mr. King ignored valuables inside the residences and searched instead for specific items such as cigarettes, drugs, alcohol, and money. Mr. King's actions when confronted by various people provide further insight into his ability to formulate intent: (1) when confronted by Ms. Norris, he was coherent enough to flee; (2) when confronted by Mr. Faust, he came up with an excuse as to why he was on the Smiths' deck; (3) when confronted by police outside the Smiths' front door, he tried to discard stolen items; and (4) when informed he was being

6

arrested for burglary, he was able to immediately lie and tell police he had permission to be in the residence. Moreover, when communicating with law enforcement, he demonstrated quick reflexes, showed situational awareness, and behaved in a manner that demonstrated he understood what the police were saying. None of the officers contacting Mr. King believed he was intoxicated to the point where he did not understand what was happening; he did not pass out, sleep, or vomit and was medically cleared for booking. Given all, the jury could conclude, beyond a reasonable doubt, Mr. King's asserted intoxication did not affect his ability to form the required criminal intent.

## SAG

Mr. King expresses four concerns in his SAG: (1) violation of his right to a fair and impartial jury when a juror notified the court of his children's ethnicities; (2) violation of his right to due process when Corporal Stohel was allowed to remain at counsel table with the prosecutor and consequently share information with fellow officers who were witnesses; (3) Washington Pattern Jury Instruction 4.01 (discussing the reasonable doubt standard) undermines the presumption of innocence and shifts the burden of proof; and (4) the court erred in imposing LFOs without first inquiring into his ability to pay.

Regarding Mr. King's concerns about a biased juror, the record does not include a transcript of jury voir dire. Similarly, the record does not support Mr. King's concerns that Corporal Stohel shared information he learned from being present at counsel table throughout the trial with excluded witnesses. First, the State is entitled to have a

7

representative at counsel table. ER 615. Second, the appropriate means for raising matters outside the record is through the filing of a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

As for Mr. King's concern about the reasonable doubt jury instruction, the instruction given by the court in relevant part reads: "A reasonable doubt is one for which a reason exists." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). The Washington Supreme Court has approved WPIC 4.01, concluding the instruction allows both the State and the defendant to argue their theories of the case. *State v. Bennett*, 161 Wn.2d 303, 317, 165 P.3d 1241 (2007). The *Bennett* court expressly directed trial courts to use solely WPIC 4.01 when instructing on reasonable doubt. *Id.* at 318. Washington courts have found WPIC 4.01 meets the due process requirements and such an instruction is not the same as telling a jury it must give a reason for its doubts. *Id.* at 317-18; *see also State v. Thompson*, 13 Wn. App. 1, 4-5, 533 P.2d 395 (1975) (interpreting a variation of WPIC 4.01).

As we are remanding the case for entry of findings of fact, Mr. King's final concern, which deals with the imposition of discretionary LFOs, can be addressed at that time. *See State v. Blazina*, 182 Wn.2d 827, 832-35, 344 P.3d 680 (2015).

Affirmed and remanded for proceedings consistent with this opinion.

No. 31802-8-III
*State v. King*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

9