# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 59121-9-II |
| GEOFFREY N. BURNS, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| DINA P. BURNS, | |
| Appellant. | |

GLASGOW, J.—Dina and Geoffrey Burns[1] were married for several years and had three children together. Geoffrey petitioned for dissolution. After the dissolution trial in 2022, but before the court entered a final parenting plan, Dina absconded with the children, who were 6, 8, and 10 years old. Geoffrey reported the abduction to police, and before Dina and the children were located, the trial court entered a permanent parenting plan based on the facts before the court at the dissolution trial.

The 2022 parenting plan limited Dina's contact with the children under RCW 26.09.191 based on an emotional impairment and ordered that the children would reside primarily with Geoffrey, and would live with Dina every other weekend. The court also ordered Dina to obtain a psychological evaluation and comply with recommended treatment. Then, approximately 12 days after Dina left Washington with the children, she was found on a bus in Connecticut and arrested.

---

[1] We use first names to avoid confusion.

The children were returned to Geoffrey, and temporary orders prevented Dina from having any contact with the children. Dina was later convicted of three counts of first degree custodial interference.

Geoffrey immediately petitioned for a major modification of the parenting plan seeking sole residential time with the children and supervised visits for Dina. The court granted his request and found that Dina intentionally absconded with the children and did not receive the mental health treatment recommended in her psychological evaluation. The court required that all of Dina's visitation with the children be supervised and ordered that Dina could achieve increased contact with the children through compliance with treatment recommendations and reunification therapy with the oldest child. The court ordered Dina to pay attorney fees.

Dina appeals, challenging the residential schedule, the court's alleged failure to protect her from Geoffrey's abusive litigation, and evidentiary rulings excluding fact and opinion testimony about Geoffrey's childhood trauma. She also argues the fee award was influenced by a false financial statement. We affirm the final parenting plan and attorney fee award. We grant Geoffrey's request for reasonable attorney fees because this is a frivolous appeal.

FACTS

I. BACKGROUND

Dina and Geoffrey were married for several years and had three children together. Geoffrey was in the military, and Dina was accepted to a Ph.D. program in electrical and computer engineering in Canada. Geoffrey petitioned for dissolution and the case proceeded to trial in 2022 when the children were 6, 8, and 10.

After trial but before entry of a final parenting plan, Dina was scheduled for a weekend visit with the children under a temporary order. When she did not return the children as scheduled, Geoffrey learned that Dina had taken the children on a one-way flight to New York. Dina called Geoffrey from New York asking him to send the children's passports in exchange for her equity in the family home. Geoffrey reported the abduction to police.

A.      2022 Permanent Parenting Plan

Two days later, while Dina and the children were still in New York, the trial court signed a final parenting plan based on the evidence presented at the prior dissolution trial.

The 2022 parenting plan limited Dina's contact with the children under RCW 26.09.191 based on an emotional or psychological problem that could result in long term damage to the children. The plan ordered that during the school year, the children would stay with Dina every other weekend, they would visit with her on Wednesday evenings, and otherwise they would live with Geoffrey. The plan ordered equal residential time over the summer. It also required advanced written notice of any travel outside of Washington.

The 2022 parenting plan required Dina to undergo a psychological evaluation with a parenting component, comply with any recommended treatment, and attend co-parenting counseling. The plan ordered Dina to provide a copy of the evaluation and compliance reports to Geoffrey. The plan further provided that the evaluation and treatment requirements were a prerequisite to Dina seeking increased residential time or any other modification of the parenting plan.

B.        Custodial Interference Convictions

Two days after the entry of the 2022 final parenting plan, the court entered an ex parte restraining order providing that when she returned, Dina would not have visitation with the children. The FBI found Dina and the children on a bus in Connecticut approximately twelve days after they left Washington. Dina was arrested and the children were released to Geoffrey's care.

Geoffrey immediately petitioned for a major modification of the parenting plan. He proposed a parenting plan ordering that Dina have no contact with the children based on RCW 26.09.191 restrictions, citing Dina's emotional impairment, abusive use of conflict, and withholding. A temporary order filed on May 13, 2022, provided that Dina would have no visitation.

Dina was convicted of three counts of first degree custodial interference with an intent to deprive Geoffrey of his lawful right to parenting time under a court order. The criminal court issued domestic violence no-contact orders that prevented Dina from having any contact with the children for five years as a result of her custodial interference. She was sentenced to time served.

C.        Psychological Evaluation and Treatment

Dina underwent a psychological evaluation, and the evaluator made specific recommendations for individual therapy to focus on specific issues, as well as reunification therapy. Dina did not immediately begin reunification therapy but she attended individual therapy. Her individual therapy was not tailored to the goals outlined in the psychological evaluation. Dina did not immediately provide a copy of the evaluation to Geoffrey as required under the 2022 permanent parenting plan.

D.    Supervised Visitation

Dina moved for supervised visitation and sought to have the no-contact orders revised, though she had not yet turned over the evaluation or begun reunification therapy. Geoffrey agreed the children should have a relationship with Dina, but opposed the motion because he had not seen the evaluation or compliance reports. Dina opposed releasing the evaluation because she feared it would be used against her. After a hearing that was not transcribed for our record, the court denied Dina's motion for visitation and ordered her to begin reunification therapy.

Dina brought successive, unsuccessful motions to allow visitation without engaging in reunification therapy, arguing it was too difficult to find a reunification therapist. The court denied her motions and eventually ordered her to pay $600 in attorney fees out of a trust account, apparently as a sanction for repeatedly filing the same motion after the parties agreed reunification therapy was needed. The hearings where the court denied her motions and ordered the $600 payment were not transcribed for our consideration.

Eventually, Dina began supervised visitation through reunification therapy under an agreed order, and the no-contact orders were modified to allow this contact. The initial sessions, held remotely, went well, but the oldest child missed some visits because he did not want to see Dina. Then, at the first in-person session with the two younger children, Dina passed one child a note addressed to the oldest child. The note read, "I'm glad to hear that you have a therapist to help you to find out why you don't want to see your lovely and good mother. I know this will be over soon" and, "Many people want to [see] us in Ecuador and invite us to eat like in the old days." Ex. 12, at 30-31. No more in-person visits were held, and the reunification therapist withdrew from the case

soon after. Dina's last contact with the children was a virtual reunification therapy session with the younger two children approximately two months before the modification trial.

## II. Modification Trial

Approximately 18 months after the entry of the 2022 parenting plan, the parties went to trial on Geoffrey's petition for a major modification filed several months earlier. The children were 9, 11, and 13 at the time of the modification trial.

Geoffrey argued that Dina's custodial interference convictions, lack of mental health treatment, and lack of accountability warranted entering a permanent parenting plan requiring supervised, therapeutic visitation. Geoffrey requested the court maintain the RCW 26.09.191 restriction based on Dina's emotional impairment that was in the 2022 parenting plan. He also requested additional restrictions based on her abusive use of conflict and withholding the children.

Dina agreed there was adequate cause to modify the plan and requested the court remove the RCW 26.09.191 restriction based on her emotional impairment and order that the children primarily live with her. She asked the court to impose RCW 26.09.191 restrictions on Geoffrey due to physical and emotional abuse of the children, an emotional impairment that could damage the children, and withholding the children. Her proposed parenting plan did not include abusive use of conflict restrictions on Geoffrey and she did not mention any concerns about abusive litigation in her trial brief. Additionally, she argued that her custodial interference convictions were unwarranted and implied that Geoffrey and the court were to blame for her actions by causing her emotional distress.

A.      Evidence Presented

Geoffrey testified about the circumstances surrounding the abduction and said he was still fearful that Dina would "take off" with the children. 1 Verbatim Rep. of Proc. (VRP) at 164. He agreed that Dina should be in the children's lives, but that Dina needed to comply with mental health treatment to ensure reunification could occur "in a healthy, safe way" for the children. 1 VRP at 257. Geoffrey also testified that the oldest child was traumatized by witnessing Dina's arrest and resistant to spending time with Dina due to his fear and confusion. On cross-examination, Dina asked Geoffrey, "Do you think that you could have suffered a trauma in your childhood caused by the fact that your father separated you from your mother via court when you were 6 months old?" 1 VRP at 256. The court sustained Geoffrey's objection because Geoffrey's childhood trauma was irrelevant to the modification trial.

Dina acknowledged the basic facts behind the custodial interference conviction and that it caused trauma to the children. But she characterized the conviction as "a big, big misunderstanding." 1 VRP at 309. She admitted writing the note to her son but claimed the reunification counselor helped her to deliver it and then misconstrued its contents. The note itself was admitted as an exhibit.

Dina began to testify, "This action on Geoffrey's part to want to separate the mother from the children and this stems from his childhood trauma because the same thing was done to him. Scientifically --" 1 VRP at 420. Geoffrey objected that Dina was not an expert, the testimony assumed facts not in evidence, and was speculative. The court asked Dina about her qualifications to offer a technical opinion and she responded, "I myself as a scientist, I do a lot of science -- a lot of research -- scientific research." 1 VRP at 421. The court sustained Geoffrey's objection and

explained, "You're not qualified to render an opinion or offer testimony which would be expert testimony." *Id.*

Dina presented expert testimony from a forensic psychologist and her therapist to refute the diagnosis in her psychological evaluation. Neither the expert nor Dina's therapist performed a new psychological evaluation or opined that Dina met the goals set out in the original psychological evaluation.

B.      Closing Arguments

In her closing argument, Dina argued that her custodial interference was justified by Geoffrey's actions and should be given minimal weight by the court. She also argued that the psychological evaluation was not credible and that it was unfair to require her to follow the evaluator's recommendation that she attend reunification counseling. She argued for the first time in her closing argument that the court should find Geoffrey committed abusive use of conflict based on seeking temporary orders restricting her contact with the children while she was incarcerated and canceling too many of her visits with the children. When she raised the topic of Geoffrey's childhood trauma in closing, the court sustained Geoffrey's objection and reminded Dina that she was not qualified to give her opinion.

Geoffrey reiterated in his closing argument that he wanted Dina to be involved in the children's lives, but that Dina needed the appropriate treatment so she could be a healthy parent. He emphasized that Dina caused trauma to her children by absconding with them and then failed to take responsibility for those actions, showing she was not able to place the children's best interest above her own. Additionally, he asked that Dina bear the cost of reunification counseling and pay his attorney fees because her actions caused the need for these additional expenses.

C.     Final Parenting Plan

In its oral ruling, the trial court explained that modification was warranted based on Dina's failure to follow court orders, receive the recommended treatment, or take accountability for her actions. Additionally, the trial court cited a lack of trust caused by Dina's actions and explained that Dina's failure to show remorse left the court with "some concern about having Ms. Burns have contact with the children where she can simply take them again." 2 VRP at 498. The court told Dina that her refusal to follow the 2022 parenting plan indicated she was "moving backwards" and that the court needed to craft a parenting plan to rebuild the trust lost by her custodial interference and noncompliance. *Id.* Thus, the court found adequate cause to modify the parenting plan and granted Geoffrey's request for modification.

The court specifically found that Dina's testimony attempting to provide an innocuous explanation for the trip to New York was not credible. The court also found that Dina failed to comply with the treatment recommendations of the psychological evaluation, and that Dina's conduct since the 2022 parenting plan had a negative impact on the emotional wellbeing of the oldest child. Accordingly, the court found that Dina had not met her burden to show that she no longer had a long term emotional impairment that impacted her ability to parent under RCW 26.09.191. Thus, the trial court denied Dina's request for modification in her favor.

The modified parenting plan required Dina to engage in reunification therapy with the oldest child, but found that the younger two children were "ready to move to another stage" so reunification therapy was no longer needed for Dina to have contact with them. 2 VRP at 504. The modified parenting plan ordered that Dina could have up to four hours of supervised in-person visitation with the younger two children every two weeks and one monitored phone or video call

9

per week. The plan ordered that Dina was to pay for reunification and supervision expenses. The plan also allowed additional phone calls if initiated by any of the children, but provided that all calls must be monitored. The criminal no-contact orders were rescinded at Geoffrey's request, and the trial court entered a temporary restraining order restricting Dina's contact with the children to the terms of the parenting plan.

The court did not make a finding about the credibility of the earlier psychological evaluation, and instead the court ordered that Dina had the option of obtaining a new evaluation and complying with any recommended treatment in that evaluation instead of the earlier one. After complying with the treatment recommendations in either the original evaluation or in a new evaluation, if she chose to obtain one, Dina was free to seek additional time with the children. The plan also barred Dina from taking the children outside the state of Washington and required Dina to obtain Geoffrey's written permission before taking them outside of Kitsap County, even if supervised.

The court ordered Dina to pay attorney fees. It explained that the fees were incurred because of her deliberate choices in absconding with the children and then failing to comply with the 2022 parenting plan. Geoffrey's attorney filed a declaration seeking payment of the actual amount he billed Geoffrey during the case, based on several invoices. The attached invoices showed that Geoffrey was billed at a discounted rate of $250 per hour, though the attorney's usual rate was $300 per hour. The balance in the trust account was applied toward the ultimate fee award.

Dina unsuccessfully moved for reconsideration. Dina appeals.

ANALYSIS

I. MODIFICATION OF PARENTING PLAN

Dina challenges the parenting plan on the grounds that the trial court failed to order equal residential time under RCW 26.16.125, failed to prevent Geoffrey's abusive litigation, and failed to consider the psychological effect of Geoffrey's childhood trauma. We disagree and affirm the parenting plan.

A.      Legal Principles

In the interest of finality, parties must meet a high bar to modify a permanent parenting plan. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). First, the moving party must make a threshold showing of adequate cause for modification. RCW 26.09.270. Then, the court may modify the existing parenting plan if it finds that there has been a substantial change in circumstances since the prior plan was entered and that a modification is necessary to serve the best interests of the child. RCW 26.09.260(1). A custodial interference conviction constitutes a substantial change in circumstances. RCW 26.09.260(3).

There is a presumption in favor of maintaining the existing residential schedule, but the presumption can be rebutted if the present arrangement is detrimental to the child or if a parent has been convicted of custodial interference. RCW 26.09.260(2)(c)-(d). Additionally, "[t]he court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." RCW 26.09.260(4).

We review a trial court's modification of a parenting plan for abuse of discretion, meaning the court's decision is manifestly unreasonable or based on untenable grounds or reasons. *McDole*,

122 Wn.2d at 610; *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Parenting plan modifications are rarely reversed on appeal because "'[t]he emotional and financial interests affected by such decisions are best served by finality.'" *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (alteration in original) (internal quotation marks omitted) (quoting *In re Parentage of Jannot*, 110 Wn. App. 16, 21, 37 P.3d 1265 (2002)). We do not substitute our judgment for the superior court's judgment, weigh the evidence, or evaluate witness credibility. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011).

B.      Residential Schedule

Dina argues that the court abused its discretion by failing to order equal parenting time under RCW 26.16.125. We disagree.

RCW 26.16.125 provides, "[T]he rights and responsibilities of the parents in the absence of misconduct shall be equal, and one parent shall be as fully entitled to the custody, control and earnings of the children as the other parent." Although that provision gives both parents an equal *right* to custody, we held in *Weber v. Weber*, 6 Wn. App. 722, 496 P.2d 576 (1972), that it does not constrain a trial court's discretion to make residential placement decisions based on the child's best interest. Additionally, in *State v. LaCaze*, 95 Wn.2d 760, 763, 630 P.2d 436 (1981), the Washington Supreme Court explained that RCW 26.16.125 means that "in the absence of a court order, both [parents] share the right to custody even if the parents are living apart."

Dina has not cited authority showing that RCW 26.16.125 controls over the provisions of RCW 26.09.260, .191, or the best interest of the child when courts make residential schedules. Both the original parenting plan and the new plan included RCW 26.09.191 limitations based on Dina's emotional impairment, so the court had discretion to impose limitations for the children's

protection. Therefore, we should disagree with Dina and hold that RCW 26.16.125 did not mandate an equal residential schedule.

To the extent Dina also argues that the court abused its discretion by failing to weigh the children's interest in attachment with her, we disagree. The court explained it wanted the children to have healthy contact with Dina but could not ignore the risk that she would abscond with them if not supervised. The court also explained to Dina that she was not yet a psychologically safe parent because of her refusal to comply with the 2022 parenting plan by receiving the mental health treatment and reunification therapy recommended in her psychological evaluation. Nevertheless, the court determined that reunification therapy was no longer needed for the younger two children, only for the older child who was still struggling with trauma caused by Dina's actions. Moreover, the court provided two alternative pathways to increased time with the children—if she did not agree with the original psychological evaluation, she could obtain a new evaluation and follow its treatment recommendations instead. Finally, the trial court invited Dina to seek additional time with the children through minor modification of the parenting plan once she complied with the evaluation and treatment requirements imposed. Thus, the trial court was not unduly restrictive and we see no abuse of discretion in this regard.

C.      Abusive Litigation

Dina argues that the trial court abused its discretion by allowing Geoffrey to engage in abusive litigation. We disagree.

We note that the statutes she cites are irrelevant to the parenting plan modification. RCW 26.51.040 sets forth the procedure for a hearing when a party seeks an order restricting abusive

litigation. Former RCW 26.50.050 (2008), repealed effective 2022, was another procedural statute allowing telephonic service in certain circumstances.

As argued in her opening brief, the thrust of this argument seems to be that the new parenting plan allows Geoffrey too much control over her time with the children including requiring her to pay the costs of reunification therapy and visitation supervisors. But the court limited her residential time under RCW 26.09.191 and ordered her to pay the costs of supervision and reunification therapy because she caused the need for those services through her deliberate actions. She has not challenged the court's RCW 26.09.191 determination or argued that the limitations were not reasonably calculated to protect the children from harm, and she has not shown that ordering her to pay for those services was an abuse of discretion.

Additionally, to the extent she challenges the court's refusal to impose RCW 26.09.191 limitations against Geoffrey due to abusive use of conflict, her arguments at trial concerned Geoffrey's attempt to limit her contact with the children by filing for temporary orders shortly after her arrest and by canceling too many scheduled visits. The court agreed with Geoffrey that the temporary orders were needed to protect the children, so it could not have been abusive litigation under RCW 26.51.020 to seek those orders. Moreover, she has made no showing about the other aspects of the definition including the requirement that the person filing the abusive litigation has been found to have committed domestic violence against the other party. RCW 26.51.020.

Though she raises additional fact-based arguments in her reply brief, we need not consider them. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An

issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Therefore, her arguments referencing the concept of abusive litigation are without merit.

D.      Geoffrey's Alleged Childhood Trauma

Dina also argues that the court abused its discretion by failing to consider evidence about

Geoffrey's childhood trauma and order him to obtain a psychological evaluation. We disagree.

We review evidentiary rulings for abuse of discretion. *Peralta v. State*, 187 Wn.2d 888,

894, 389 P.3d 596 (2017). Technical and scientific opinions are governed by ER 702, which

requires experts to be qualified through knowledge, skill, experience, training, or education. The

trial court has discretion to determine if an expert is qualified under ER 702, including to offer

opinions about mental health. *In re Det. of A.S.*, 138 Wn.2d 898, 917, 982 P.2d 1156 (1999). Lay

witnesses may not opine about scientific or technical issues. ER 701.

Here, the trial court sustained Geoffrey's objection to Dina's attempt to testify based on

scientific knowledge about Geoffrey's psychological motivations for wanting to separate the

children from Dina. The court excluded this testimony because Dina did not qualify as an expert

to offer an opinion about the effect of Geoffrey's alleged childhood trauma. Dina asserted she was

a scientist, but she has not shown that she, as an electrical and computer engineer, was qualified

to offer psychological opinion testimony. Therefore, the challenged evidentiary ruling was not an

abuse of discretion.

Additionally, the trial court sustained Geoffrey's objection when Dina attempted to cross-

examine him about his alleged childhood trauma. That testimony was excluded on relevancy

grounds. "Relevant evidence" is evidence that makes any fact of consequence more probable or

less probable. ER 401. Though relevancy is a low bar, Geoffrey's alleged childhood trauma was

not relevant to the issues in the modification trial, namely the facts that arose *after* the entry of the 2022 parenting plan. *See* RCW 26.09.260(1). Dina has not shown this ruling was an abuse of discretion.

Additionally, to the extent Dina has raised a challenge to the trial court's refusal to impose RCW 26.09.191 limitations on Geoffrey, she has not shown an abuse of discretion. And we will not consider the additional RCW 26.09.191 arguments regarding Geoffrey's conduct raised for the first time in her reply brief. *See Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

## II. ATTORNEY FEE AWARD

Dina challenges the court's attorney fee award on the ground that it was based on Geoffrey's attorney's "false financial statements to the court about the charge of his services in order to charge the mother more than he usually charges to his client." Br. of Appellant at 8.

Dina relies on RCW 43.07.210 which provides, "Any person who files a false statement, which he or she knows to be false, *in the articles of incorporation or in any other materials required to be filed with the secretary of state* shall be guilty of a gross misdemeanor punishable under chapter 9A.20 RCW." (Emphasis added.) *See* Br. of Appellant at 8, 11. It is irrelevant to dissolution proceedings or attorney fee awards.

To the extent Dina appears to challenge $600 in fees for two hours of attorney work that Dina was ordered to pay out of a trust account on July 14, 2023, she does not establish that the trial court erred in making this award. The thrust of Dina's concern seems to be that she was overcharged by $100 because she was ordered to pay the attorney's usual rate of $300 per hour, despite the attorney charging Geoffrey a discounted rate of $250 per hour. But to the extent she raised a valid challenge, we cannot review the $600 fee award because the pretrial hearing that

resulted in the $600 fee award was not transcribed for our consideration. Moreover, Dina has not shown that $300 per hour for two hours of attorney time was unreasonable, nor has she established that the discounted $250 per hour rate she paid for the rest of the attorney fees imposed was unreasonable.

Finally, we note that although Dina demands relief from all the financial orders, she does not articulate another specific concern besides the allegedly false financial statement. To the extent she complains that the court ordered her to pay the fees of visitation supervisors and other costs associated with her contact with the children, she has not cited the exact fees/costs she challenges, nor does she explain how the imposition of such costs/fees was an abuse of discretion, aside from her claim that it constitutes abusive litigation, which it does not.

Therefore, Dina's arguments about a false financial statement influencing the financial orders are without merit.

## APPELLATE ATTORNEY FEES

Geoffrey argues he is entitled to reasonable appellate attorney fees for responding to a frivolous appeal. RAP 18.9(a) permits an award of attorney fees as a sanction for filing a frivolous appeal. An appeal is frivolous "'if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal.'" *State v. Chapman*, 140 Wn.2d 436, 454, 998 P.2d 282 (2000) (alteration in original) (quoting *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 905, 969 P.2d 64 (1998)).

Here, as discussed above, there is no legal or factual support for Dina's challenge to the parenting plan modification. She has failed to raise any debatable issue that might result in a reasonable possibility of reversal. It also took significant time to understand the scope of Dina's

challenge because Dina provides no record citations in the facts section of her brief and her arguments do not clearly state the rulings she challenges. We award Geoffrey his reasonable attorney fees on appeal, subject to his compliance with RAP 18.1(d).

## CONCLUSION

We affirm the parenting plan and order an award of reasonable attorney fees to Geoffrey in an amount to be determined by this court's commissioner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

PRICE, J.